UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDAL JEROME DALAVAI,<br><br>                                    Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>                                    Defendants. | Case No.: 3:22-cv-01471-CAB-DDL<br><br>**ORDER PARTIALLY DISMISSING AMENDED COMPLAINT WITH PREJUDICE**<br><br>**ORDER DISMISSING MOTION FOR PRELIMINARY INJUNCTION WITH PREJUDICE**<br><br>[ECF Nos. 41, 49] |

After an appeal to the Ninth Circuit, Plaintiff has filed a an amended complaint, [ECF No. 41], against Defendants University Health Services of Rancho Springs (d/b/a as Inland Valley Medical Center), the Regents of the University of California (Regents), Drs. Laurence Boggelin and Daniel Calac, Ms. Donna Loza, and Mr. Deo Besana.[1]   The complaint again alleges EMTALA violations, state law claims, and claims under 42 U.S.C. § 1983 for violations of the Due Process Clause and the Supremacy Clause.  [ECF No. 41.]

---

[1] As the attorneys for Dr. Boggelin point out, Plaintiff misspelled his name as "Dr. Boggeln" in his amended complaint.  [ECF No. 46 at 2.]

Defendants have filed motions to dismiss [ECF Nos. 43, 44 and 46.] After those motions were filed, Plaintiff filed a motion for preliminary injunction.[2] [ECF No. 49.] The Court addresses each below.

## I.      PROCEDURAL BACKGROUND

On Sept. 22, 2022, Plaintiff Randal Dalavai filed, pro se, the initial complaint in this action alleging violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, against University of California, Inland Valley Medical Center (IVMC), Elizabeth Hospice, and a number of individual medical providers. [ECF No. 1.] The complaint alleged that treatment provided by the named defendants to Ms. Geetha Dalavai, Plaintiff's mother, violated EMTALA. Before Plaintiff served any of the named defendants, the Court issued an order to show cause why the case should not be dismissed as he was not the proper party to the complaint—in that he was not the patient—and therefore had no claim under EMTALA. [ECF No. 4.]

In response, Plaintiff sought to amend the complaint and add himself as the administrator of Ms. Dalavai's estate. [ECF No. 13.] The amended complaint alleged EMTALA violations on behalf of his mother's estate, as well as state law causes of action on behalf of the estate and himself personally. On Nov. 15, 2022, the Court dismissed the amended complaint insofar as Plaintiff still alleged EMTALA violations individually since the Court concluded he personally did not have Article III standing for an EMTALA claim. Further, the Court advised him that he could not bring any claims as the representative of the estate pro se. The estate was required to be represented by counsel. The Court also

---

[2] On the same day Plaintiff filed his motion for preliminary injunction, he moved the Court to stay consideration of the EMTALA claims (which are implicated by the requested injunctive relief). [ECF No. 50.] The Court denies that stay request as there is no reason the Court cannot decide the claims presented in the amended complaint. *See Clinton v. Jones*, 520 U.S. 681, 7065 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.")

declined to exert supplemental jurisdiction over the asserted state law claims.  [ECF No. 15.]

Plaintiff appealed the dismissal.  [ECF No. 20.]  The Circuit Court reversed, holding that Plaintiff sufficiently pled an injury for Article III standing purposes  and remanded for further proceedings, including whether Plaintiff plausibly stated a claim under Fed. R. Civ. P. 12(b)(6).  [ECF No. 30.]

On remand, [ECF No. 39], Plaintiff, again proceeding pro se, filed an amended complaint identifying himself as the plaintiff in the caption against the Regents of the University of California (as the governing body of University of California San Diego Health ("UCSD")), Universal Health Services of Rancho Springs (d/b/a as Inland Valley Medical Center), two medical providers and two officials in the California Department of Public Health.[3]  [ECF No. 41.]

Separately in Nov. 2022, after being informed that he could not proceed pro se as the representative of Ms. Dalavai's estate, Plaintiff initiated another lawsuit in this District, Case No. 22-cv-1992 (*Dalavai II*).  In that suit he identified himself as the successor in interest to his decedent mother and could therefore proceed pro se in that capacity.  That lawsuit named the Regents of the University of California and Elizabeth Hospice as defendants alleging EMTALA violations and state law claims.  [*Dalavai II*, ECF No. 1.]

Those defendants moved to dismiss.  [*Dalavai II*, ECF Nos. 11 and 13.]  The Court granted the Regents' motion to dismiss the EMTALA claim (the only federal claim asserted) for failure to state a claim.  The Court also granted the Hospice's motion to dismiss for lack of subject matter jurisdiction.  The Court again declined to exercise supplemental jurisdiction over any state law claims.  [*Dalavai II*, ECF No. 27.]

---

[3] Plaintiff does not identify himself in the caption as the successor in interest to Ms. Dalavai but the body of the complaint and the identification of other family members as "nominal defendants," as well as his subsequent filing of an Affidavit of Successor in Interest, [ECF No. 63], indicates his intent to pursue survivor claims for his decedent mother.

Plaintiff appealed the dismissal.  [*Dalavai II*, ECF No. 36.]  The Circuit Court affirmed the dismissal finding that the Regents (the University of California San Diego Hospital) were not subject to an EMTALA claim.  *Dalavai v. The Regents*, No. 23-55412, 2024 WL 3842100, at *1 (9th Cir. Aug. 16, 2024).  Although the Circuit Court noted that Plaintiff did not challenge the dismissal of the Hospice for lack of jurisdiction and therefore waived those issues, the Circuit Court concluded the dismissal was proper.  *Id.*  Plaintiff has filed a petition for review with the Supreme Court.

This procedural history is included in the background for the pending motions as it is significant and dispositive for claims Plaintiff once again seeks to assert in his newly amended complaint.  In addition to the federal lawsuits Plaintiff filed, he filed (at least) the following cases in state court:

o *Randal Dalavai, et. al. v. Regents of the University of California, et. al.*, San Diego Superior Court, Case No. 37-2021-00052803-CU-MM-CTL, filed December 17, 2021;

o *Randal Jerome Dalavai, et. al v. The Regents of the University of California, et. al.*, San Diego Superior Court, Case No. 37-2022-00047500-CU-PO-CTL, filed November 22, 2022; and

o *Randal Jerome Dalavai, et. al. v. The Regents of the University of California*, San Diego Superior Court, Case No. 37-2023-00042360-CU-PO-CTL, filed September 27, 2023

The Court now addresses the motions filed against the operative complaint.  [ECF No. 41.]

## II.    FACTUAL BACKGROUND

The core facts follow.  Plaintiff alleges that on Sept. 1, 2020, his mother Ms. Dalavai presented at the emergency room of Inland Valley Medical Center (IVMC).  [Compl. ¶ 20.] After a medical screening to assess her condition, Ms. Dalavai was admitted to IVMC. [*See id.*]  On Sept. 16, 2020, Ms. Dalavai was transferred to UCSD Health for "specialized pulmonary evaluation and potential advanced treatments." [*Id.* ¶ 24.]

The operative complaint moves on to document numerous alleged infractions in Ms. Dalavai's continuing care at USCD.  For example, Plaintiff alleges that a treating physician

misrepresented her chances of recovery post-intubation.  [*Id.* ¶ 57.]  Another pressured the family into home hospice care.  [*Id.* ¶ 62.]  In Oct. 2020, Ms. Dalavai was transitioned to hospice care, and she passed away on Dec. 20, 2020.  [*Id.* ¶¶ 73, 139.]

## III.    ANALYSIS

The Court does its best to parse the claims pleaded by Plaintiff in the operative complaint.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (pro se complaints should be liberally construed).  The Court starts with those claims over which it has original jurisdiction.

The usual standard for a motion to dismiss applies. Fed. R. Civ. P. 12(b)(6) permits a party to raise the defense that the complaint "fail[s] to state a claim upon which relief can be granted."  The Court evaluates whether a complaint states a recognizable legal theory and sufficient facts in light of Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Determining whether a complaint states a plausible claim for relief is a 'context-specific task,' requiring 'the reviewing court to draw on its judicial experience and common sense.'"  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 679).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the collective facts pled "allow[] . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court accepts as true all allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

As it relates to Fed. R. Civ. P 12(b)(1), "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). This threshold requirement "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). As such, the Court can dismiss a case on subject matter-jurisdiction grounds sua sponte. *Snell v. Cleveland*, Inc., 316 F.3d 822, 826 (9th Cir. 2002).

### A. EMTALA Claims Against the Regents (Counts 6–8)

Plaintiff asserts EMTALA claims (Counts 6–8) against the Regents based on, as it appears to the Court, the decision to classify Ms. Dalavai's admission as an inpatient. [Compl. ¶¶ 114-15].

Plaintiff's lengthy complaint recounts in detail the medical treatment Ms. Dalavai received at both IVMC and at UCSD. Indeed, Plaintiff claims that "[t]he decision to transfer Geetha to UCSD Health was based on the need for specialized care that IVMC could not provide[.]" [Compl. ¶ 48.] Much of his complaint focuses on his disagreement with the procedures that the medical staff employed while his mother was a patient, the tests performed, and the conclusions the medical providers reached regarding her ineligibility for a possible lung transplant and other further treatment.

Regardless of how many ways Plaintiff attempts to frame his complaint, the alleged facts leave no debate that Ms. Dalavai was admitted as a patient on Sept. 1, 2020 to IVMC and transferred as a patient to UCSD on Sept. 16, 2020.  [Compl. ¶¶ 95–96.]  In these circumstances, Plaintiff cannot state a claim for an EMTALA violation—as the Ninth Circuit has already ruled.

The elements of collateral estoppel are: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTecCorp.*, 204 F.3d 880, 885 (9th Cir. 2000).  This issue has already been litigated in *Dalavai II*, where a final judgment was issued on the merits.  The Ninth Circuit agreed with this Court.  *Dalavai*, No. 23-55412, 2024 WL 3842100, at *1.  And Plaintiff was a party to the first proceeding.  This should be the end of the analysis.

Collateral estoppel notwithstanding, Plaintiff clearly seeks to turn EMTALA into a federal claim for negligence.  *See Baber v. Hospital Corp. of America*, 977 F.2d 872, 880 (4th Cir. 1992).  But EMTALA requirements do not apply to ongoing inpatient treatment, the type of treatment that Ms. Dalavai is alleged to have received.  *See Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1166 (9th Cir. 2002).

Plaintiff's EMTALA claims are dismissed with prejudice.

**B. Section 1983 Claims Against IVMC (Counts 2 & 4)**

Plaintiff appears to make a Supremacy Clause claim against at least the IVMC Doctors, Ms. Donna Loza, and Mr. Deo Besana.[4]  A Section 1983 claim may only be brought against a "person acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (internal quotation marks omitted).  Courts have recognized a claim alleging a violation of the Supremacy Clause under Section 1983 against state actors

---

[4] To be consistent with the complaint, the Court refers to Defendant University Health Services as IVMC.

who refuse to comply with federal statutes.  *See, e.g., Arizona Hosp. & Healthcare Ass'n v. Betlach*, 862 F. Supp. 2d 978, 982 (D. Ariz. 2012).

Plaintiff pleads that IVMC is a state actor because UCSD was involved in the transfer of Geetha Dalavai.  [Compl. ¶ 98.]  Plaintiff does not plead that IVMC, which appears to be a private hospital, is a state actor on its own accord.  This pleading is insufficient for Section 1983 liability.  *See Price v. State of Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) (finding that appellants "suggest nothing which indicates that the actions of the private appellees were in any way imposed by the [s]tate or that they exercised some right granted by the [s]tate.").  As such, the Court dismisses all claims proceeding under Section 1983 against University Health Services/IVMC with prejudice (as reflected in Counts 2 & 4).

### C. Section 1983 Claims Against Ms. Donna Loza and Mr. Deo Besana (Counts 1, 3–5)

As it relates to Defendants Loza and Besana,[5] Defendant identifies them as managers of licensing and certification for the California Department of Public Health, San Diego County.  [Compl. ¶¶ 12–13.]  They appear to be served but have not responded to the operative complaint.  [ECF No. 45.]  Sued in their official capacities, both allegedly classified Ms. Dalavai as an inpatient after her transfer to UCSD Health.  [Compl. ¶ 96].  For this conduct, Plaintiff alleges four separate theories pursuant to Section 1983 against them.  Even though neither have responded to the amended complaint, the Court may dismiss certain claims pursuant to 12(b)(6) on its own accord where there is no possibility of relief.[6]  *See Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

---

[5] In the operative complaint, Plaintiff refers to both a "Donna Loza" and a "Donna Lopez."  The latter appears to be a typo.

[6] Notice by these Defendants is especially unnecessary here where the three motions to dismiss filed against Plaintiff address similar issues and make substantially related arguments.

1

### i. Due Process Treatment Notification/Prevention Theory

The first theory proceeds under the Due Process Clause: that Geetha Dalavai was "never notified that there was no evidence of an EMC while IVMC was gathering . . . such evidence." [Count 4, *see* Compl. ¶ 99.]  Similarly, Plaintiff asserts that Defendants Loza and Besana violated his due process rights by "preventing him from seeking legal course for damages resulting from IVMC's non-compliance with either federal law or state law." [Count 2, *see* Compl. ¶ 89.]  The Court is not aware of any precedent attached to the 5th or 14th Amendments that allows for substantive due process theory based on Ms. Dalavai's allegedly substandard treatment notification.  Even more spurious is a due process theory against Defendants Loza and Besana based on *IVMC's alleged noncompliance* with federal law.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under [S]ection 1983.")

The due process right to medical care is a narrow one, generally recognized for detainees.  *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018).  Moreover, those claims proceed under the objective deliberate indifference standard, which Plaintiff has not pleaded.  *See id.*  Against that precedential constraint, the Supreme Court has cast doubt on the extension of substantive due process theories—and the Court declines to do so here.  *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  Plaintiff's due process claims against Defendants Loza and Besana relating to notifications for Ms. Dalavai's medical care and IVMC's alleged noncompliance are dismissed with prejudice.

### ii. Supremacy Clause Theory

Plaintiff next claims that the act of classifying Ms. Dalavai's admission as an inpatient "arbitrarily terminat[ed] federal [EMTALA] obligations in violation of the Supremacy Clause." [Counts 1 & 3–4, *see* Compl. ¶¶ 78, 90, 99.][7]  For these claimed

---

[7] In Count 3, Plaintiff seeks injunctive relief against Ms. Loza and Mr. Besana from "continuing to apply California regulations in a matter that conflicts with federal law.  [Compl. ¶¶ 91–92.]  The Court construes this as another claim proceeding under the Supremacy Clause.

violations of the Supremacy Clause (which the Plaintiff brings pursuant to Section 1983), Plaintiff seeks prospective injunctive relief on behalf of his mother.   Although the "Supremacy Clause merely safeguards federal interests against state infringement and operates to preempt state regulatory action without creating individual rights," *Poder in Action v. City of Phoenix*, No. CV-20-01429-PHX-DWL, 2021 WL 1574639, at *4 (D. Ariz. Apr. 22, 2021), this restriction does not prevent a plaintiff from seeking injunctive relief.   *See Indep. Living Ctr. of S. California, Inc. v. Shewry*, 543 F.3d 1050, 1062 (9th Cir. 2008).

To be clear: the Ninth Circuit has already affirmed that Plaintiff does not have an EMTALA claim on behalf of his mother.   And under these facts, Plaintiff may not seek prospective injunctive relief on her behalf.   To obtain an injunction, Plaintiff must establish that a "real or immediate threat" exists that he will be wronged again.   *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).   For the unfortunate reason that Ms. Dalavai has passed, there is no real or immediate threat she (or Plaintiff) will be harmed by the alleged Supremacy Clause violations again.   An injunction is not appropriate relief under these circumstances, and the Court dismisses those claims (and related request for injunctive relief) with prejudice pursuant to Rule 12(b)(1).   *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (explaining the Article III prerequisites for injunctive relief).

### iii.   *Due Process Notice Theory*

The final due process theory is based on the (alleged) fact that the case involving Plaintiff's mother had been closed without receiving prior notice or opportunity to be heard, "a violation of Plaintiff's Due Process" rights.   [Count 5, Compl. ¶ 105.]   The Fourteenth Amendment guarantees that a state cannot "deprive any person of . . . property[ ] without due process of law."   U.S. Const., Amend. XIV.   "[O]ne of due process's central and undisputed guarantees is that, before the government permanently deprives a person of a property interest, that person will receive—at a minimum—notice."   *Wright v. Beck*, 981 F.3d 719, 727 (9th Cir. 2020).

As alleged, Plaintiff has stated a due process claim based on a notice theory. Plaintiff asserts that on Sept. 2, 2022, he filed a complaint with the California Department of Public Health Licensing and Certification Program relating to "matters of significant importance related to Plaintiff's rights and interests." [Compl. ¶ 104.] Plaintiff further claims that he visited the CDPH office and learned that the case had been closed without prior notice and an opportunity to be heard. [*Id.* ¶ 105.] According to him, the notice that Plaintiff received on that same day of the case's closure did not have critical documents necessary for Plaintiff's continued investigation of the case. [*Id.* ¶ 106.]

From the face of the complaint, it is unclear how either Defendants Loza and Besana are individually responsible for the alleged due process violation. To successfully plead a Section 1983 claim, Plaintiff must set forth facts that each defendant personally violated his constitutional rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). This requires an "individualized" assessment of causality to attribute conduct (or lack thereof) that allegedly forms the basis of a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The Court may adjudicate this point (and whether Defendants were acting under the color of state law) at a later juncture, but for now, this claim must proceed. As explained further below, Plaintiff may file an amended complaint proceeding **only** on this claim.

### D.    State Law Claims Against the Regents (Counts 9–13)

Aside from the EMTALA clams, there are no remaining federal claims against the Regents. Generally, the Court may still exercise subject matter jurisdiction where the federal claims have been dismissed on non-jurisdictional grounds and there is no diversity.[8] Nevertheless, the text of the supplemental jurisdiction statute makes clear that the Court may dismiss if "*all* claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3) (emphasis added). Against Defendants' arguments to the contrary, the

---

[8] Dismissals on grounds of issue preclusion are not related to subject matter jurisdiction. *See Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 862 (9th Cir. 2021).

statute does not narrow this to "all claims" asserted against a party but all federal claims in the litigation.  *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 674 (2020) ("[W]hen the meaning of the statute's terms is plain, our job is at an end.")

To recap, the Ninth Circuit has made very clear (after a determination by this Court) that Plaintiff does not have an EMTALA claim against the Regents.  Attendant to that precluded claim, Plaintiff brings five state law claims against the Regents, encompassing fraud, negligence, the intentional infliction of emotional distress, and a wide-ranging claim under the California Bane Act.  [Compl. at 41–65, Counts 9–13.]

But in this case where Plaintiff is leveraging the Court's original jurisdiction by presenting a precluded claim against the Regents, the "state law claim constitutes the real body" of the case, and the "federal claim is only an appendage."  *Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 439 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966)).  Moreover, the state law claims have nothing to do with the only surviving request for injunctive relief pursuant to Section 1983 against Defendants Loza and Besana (which relate to events that allegedly happened in 2024).  Deciding numerous, shaky state claims on their merits is not a proper use of judicial resources.[9]  As such, "the state claw claims may be fairly dismissed." *See Oneida Indian Nation of New York*, 665 F.3d at 439.

The Court thus declines to exercise supplemental jurisdiction over the state law claims pleaded against the Regents since they "substantially predominate[] over the . . . claims over which the" Court has original jurisdiction.  28 U.S.C. § 1367(c)(2).  The "recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case." *Gibbs*, 383 U.S. at 727 (1966).

---

[9] For example, Defendant Regents argues that Counts 9–13 actually allege medical malpractice and are barred by California's one-year statute of limitations for that type of claim.  Cal. Civ. Proc. Code § 340.5. The Court agrees.

1

2

### E.  State Law Claim Against Drs. Daniel Calac and Laurence Boggelin (Count 14)

3   The only claim alleged against Defendants Calac and Boggelin is a single state law

4   claim for fraudulent misrepresentation. [10]  [Count 14, Compl. ¶¶ 64–65.]  To state a claim

5   for fraudulent misrepresentation, Plaintiff must sufficiently allege (1) a misrepresentation

6   of fact, (2) knowledge of the fact's falsity, (3) intent to defraud, (4) justifiable reliance, and

7   (5) resultant harm.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974

8   (1997).  A claim that is "grounded in fraud . . . must satisfy the particularity requirement

9   of Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal

10   quotation marks omitted).  Rule 9(b) also applies to state-law causes of action grounded in

11   fraud.  *Id.* at 1125

12   Plaintiff pleads this singular fraud claim against Defendants on behalf of the

13   decedent, which Defendants Calac and Boggelin argue is improper.  Plaintiff responds that

14   his fraud claim is based on misrepresentations made to him as a "healthcare agent."  Even

15   assuming there is any basis to bring a fraudulent misrepresentation claim on behalf of a

16   decedent as a "healthcare agent," Plaintiff's complaint clearly fails to meet the necessary

17   elements for fraudulent misrepresentation.

18   The alleged fraud claim consists of "representations" that caused Plaintiff to

19   "believe[] that the physicians would adhere to their duty of providing care that met or

20   exceeded federal standards."  [Compl. ¶ 202].  This is again, a medical malpractice claim

21   masquerading as a claim for fraud.  Whether or not the claim is adjudged by Rule 9(b)'s

22   particularity standard, Plaintiff does not state a claim.  As Defendants argue, there is no

23   pleaded intent to defraud on behalf of Drs. Calac and Boggelin and no allegation that either

24   physician knew that their act of labeling Ms. Dalavai terminally ill was false.  Of course,

25   so pleading may contradict Plaintiff's own allegations: Ms. Dalavai sadly passed away

26

27

28   [10] Plaintiff incorrectly labels this claim as Count 16.  Based on the Court's best efforts to construe the operative complaint, there are just 14 pleaded counts.

3:22-cv-01471-CAB-DDL

within months of being admitted to the hospital.  [Compl. ¶¶ 73, 139.]  The claims against both Defendant Doctors are dismissed with prejudice.

### F.  Plaintiff's Request for Preliminary Injunction

Plaintiff has filed a motion for preliminary injunction based on many of the same claim theories presented in his operative complaint.  [ECF No. 49.]  The only claim that survives dismissal is the due process notice claim against Defendants Loza and Besana — one that is not implicated by Plaintiff's preliminary injunction request.  As such, the Court dismisses Plaintiff's motion for preliminary injunction with prejudice.

## IV.    CONCLUSION

Ms. Dalavai's death was certainly difficult for Plaintiff.  But Plaintiff continues to assert claims that (1) have already been adjudicated against him, or (2) have little connection to the barred federal claims that form the focus of Plaintiff's complaint.  The only surviving claim (Count 5) is the Section 1983 notice claim pleaded against Ms. Loza and Mr. Deo Besana.  The Court dismisses all other claims (Counts 1–4 & 6–14) and the request(s) for injunctive relief, [ECF No. 49], with prejudice.

Should Plaintiff choose to do so, he should file an amended complaint alleging **only Count 5** against Defendants Loza and Besana by Feb. 14, 2025.  The Court will not accept an amended complaint that alleges any other claim or includes any additional Defendants.  Plaintiff shall serve a copy of any amended complaint, a summons, and a copy of this order on both Defendants and file proof of that service with the Court.  Failure to abide by these instructions will result in dismissal.

It is **SO ORDERED**.

Dated:  January 29, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge

14