Randal Jerome Dalavai
14332 Mountain Rd
Poway, CA 92064
(872)-232-0713
randaljerome@gmail.com

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFONIA

**Case No.: 3:22-cv-01471-CAB-DDL**

**RANDAL JEROME DALAVAI,**

      **Plaintiff,**

vs.

**DONNA LOZA (OFFICIAL CAPACITY),
DEO BESANA (OFFICIAL CAPACITY)**
      **Defendant(s)**

**INJUNCTIVE AND DECLARATORY RELIEF (42 U.S.C. § 1983)**

**THIRD AMENDED COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

# **INTRODUCTION**

1. Plaintiff, Randal Jerome Dalavai, brings this action under **42 U.S.C. § 1983** for violations of his Due Process rights under the Fourteenth Amendment.

2. Defendants, Mr. Investigator Deo Besana and District Manager Ms.Donna Loza, in their official capacities, are responsible for ensuring compliance with California Department of Public Health (CDPH) regulations in investigating complaints concerning patient transfers, statutory obligations, and hospital reporting requirements.

3. This action seeks prospective injunctive relief requiring Defendants to provide transparency in their investigative findings and afford Plaintiff a meaningful opportunity to review, clarify, and respond to the evidence used in the investigation of **Complaint No. CA00803793** before the case is finalized. Without such relief, Plaintiff is deprived of the ability to address discrepancies, ensure factual accuracy, and protect his property interest in ongoing and future legal proceedings.

4. The failure to provide Plaintiff with notification of the investigative findings and an opportunity to raise objections is preventing him from ensuring that the investigator's conclusions align with the facts and assumptions relied upon by this court and the Ninth Circuit court in subsequent proceedings. As a result,

Plaintiff is deprived of the opportunity to protect his property interest, including recovering burial costs incurred due to the preventable death of his mother.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

6. Venue is proper under 28 U.S.C. § 1391(b) pursuant to 28 U.S.C. §§ 1391(b)(2), (c)(2), and (d), because the events giving rise to this action occurred in San Diego County, California, over which the Southern District of California has jurisdiction.

7. This action under ***Ex Parte Young*** doctrine is brought pursuant to 42 U.S.C. § 1983 for Violation of the Due Process Rights.

## PARTIES

8. Plaintiff, Randal Jerome Dalavai, is an individual with a property interest in the fair and transparent investigation of Complaint No. CA00803793, submitted to the California Department of Public Health (CDPH) in September 2022.

9. Defendant, Investigator Mr. Deo Besana, is an official assigned to investigate Complaint No. CA00803793 on behalf of CDPH. Mr. Besana is sued in his official capacity for actions taken while performing his investigative duties.

10. Defendant, District Manager Ms. Donna Loza, oversees CDPH's investigative and regulatory review processes. Ms. Loza is responsible for finalizing and

transmitting investigative findings related to Complaint No. CA00803793. She is sued in her official capacity for actions taken in this role.

## ARTICLE III STANDING

11. Standing is a threshold matter central to our subject matter jurisdiction (Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007)).

12. Plaintiff has standing as he has suffered an injury in fact that is concrete and particularized.

13. The injury is actual or imminent, not conjectural or hypothetical (Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

14. There is a causal connection between the injury and the conduct complained of, and the injury is fairly traceable to the challenged actions of the Defendants.

15. The injury is not the result of the independent action of some third party not before the court.

16. It is likely, as opposed to merely speculative, that the injury will be redressed by a favourable decision.

## FACTUAL ALLEGATIONS (Background and Need for Investigation)

17. On September 1, 2020, Geetha Dalavai presented to IVMC's Emergency Department with severe respiratory distress. IVMC conducted an initial assessment but simultaneously notified her and her family that there was no

evidence of an emergency medical condition, while continuing to obtain diagnostic tests.

18. At about 16:54 PDT, IVMC admitted Geetha Dalavai as either an inpatient or under Observation Status, continuing to assess her condition. **(Exhibit 1).**

19. However, UCSD Health's medical records document a different assessment, noting that Geetha Dalavai was found to have acute respiratory hypoxia upon arrival at IVMC. **(Exhibit 2).**

20. Geetha Dalavai was subsequently transferred to UCSD Health's Jacobs Medical Center (JMC) on September 16, 2020, for purported specialized treatment. However, this conflicts with the timeline of UCSD Health's medical records, which indicate that the transfer acceptance occurred on September 11, 2020—five days before the actual transfer. On that same day, Dr. Yung, a UCSD Health physician, documented that Geetha was likely not a transplant candidate but that they would still see her and evaluate further, as she was not responding to steroids. **(Exhibit 3).**

21. To understand and resolve these discrepancies, Plaintiff filed a formal complaint with CDPH in September 2022 (Complaint No. CA00803793) **(Exhibit 4),** requesting an investigation to establish a clear factual record regarding the circumstances surrounding Geetha Dalavai's transfer, admission classification, and treatment. The complaint was filed to ensure that these facts

and circumstances remain consistent throughout the litigation in both federal and state court.

22. Reconciliation and understanding of these discrepancies in the first link of the chain of events are essential to maintaining the integrity of the factual sequence leading to the preventable death of Geetha Dalavai in legal proceedings. Without access to the investigative findings, Plaintiff is deprived of a meaningful opportunity to protect his property interest, including the recovery of burial costs incurred due to the preventable death of his mother. Additionally, without resolving these discrepancies, Plaintiff will lose his ability to ensure that the facts and assumptions relied upon by the Ninth Circuit remain consistent in the state court proceedings.

23. While the investigative findings regarding the interpretation of Dr. Yung's contemporaneous statement—acknowledging the need for further evaluation rather than an immediate course of specialized treatment—remain unknown, Plaintiff cannot determine with certainty whether these findings align with the Ninth Circuit's precedent. Without this clarity, Plaintiff is deprived of the ability to reconcile conflicting information, ensure consistency across ongoing legal proceedings, and protect his property interest in pursuing rightful claims.

24. Plaintiff obtained a letter from USC that unequivocally refutes UCSD Health's representation that USC completed Geetha Dalavai's lung transplant candidacy

evaluation. As only USC's physicians have the legal authority and licensing to make such determinations, Plaintiff filed a complaint with the Medical Board of California (MBC) to investigate the unlawful practice of medicine. However, the MBC was unable to proceed without Plaintiff identifying the individual responsible for making the decision under the name of a USC authorized physician. Plaintiff seeks this information within the investigative findings to advance the MBC complaint and to support the pending state court action, where the validity of UCSD Health's representations remains a material issue.

25. Additionally, under Cal. Health & Saf. Code § 1373.96(4), a terminal illness is defined as an incurable or irreversible condition that has a high probability of causing death within one year or less, requiring the completion of covered medical services. Plaintiff seeks to verify whether the investigation obtained sufficient evidence to determine whether the hospice facility had access to the necessary medical records to conclude that Geetha Dalavai's condition met the statutory definition of a terminal illness. The investigative findings are critical to ensuring compliance with statutory requirements and protecting Plaintiff's property interest in the state court proceedings.

**CDPH INVESTIGATION AND PLAINTIFF'S PROCEDURAL DEPRIVATION:**

26. On September 20, 2022, CDPH acknowledged receipt of Plaintiff's complaint, stating that the department would investigate potential statutory and regulatory violations and that Plaintiff could submit additional information or evidence.

27. Plaintiff made multiple follow-up telephone calls to CDPH office and was informed that Defendant Mr. Deo Besana was assigned as the investigator and would reach out to Plaintiff before and after commencing the investigation.

28. After several attempts without communication from Mr. Besana, Plaintiff followed up with CDPH's supervisor Ms. Wendy Graca, who reaffirmed that Besana would reach out before finalizing any findings.

29. During this call, Plaintiff discussed key issues with CDPH, including inconsistencies in Geetha Dalavai's medical records between IVMC and UCSD Health and the basis for UCSD Health's decision not to report IVMC's handling of her transfer.

30. During this call, Plaintiff discussed key issues with CDPH, including inconsistencies in Geetha Dalavai's medical records between IVMC and UCSD Health and the basis for UCSD Health's decision not to report IVMC's handling of her transfer.

31. During the same call, CDPH Supervisor Ms. Wendy Graca stated that statutory obligations cease once a patient is admitted to the hospital. Ms. Graca further assured Plaintiff that Investigator Mr. Besana would explain how each

regulation and statute's requirements were met by UCSD Health and other facilities involved. However, Ms. Graca was unable to clarify whether liability ended regardless of whether the admission was made in good faith but assured Plaintiff that the investigator would explain how all regulatory and statutory obligations were met or not met. Consequently, Plaintiff also filed an EMTALA action in this court to stay within statutory limitations to file such a claim with whatever facts were available at that time.

32. When no communication was received, Plaintiff escalated concerns to the Office of Senate Minority Leader Brian W. Jones on November 28, 2022, seeking assistance in ensuring that CDPH fulfilled its investigative responsibilities.

33. On December 2, 2022, a CDPH supervisor personally contacted Plaintiff and confirmed that Mr. Besana would provide an update and allow Plaintiff to clarify and submit further information before the case was closed.

34. Plaintiff was not made aware that Investigator Mr. Besana had already completed the investigation on November 16, 2022, at the time of the December 2, 2022, call. Instead, Plaintiff was led to believe that Investigator Mr. Besana would provide an opportunity for Plaintiff to raise concerns and submit additional information before finalizing the investigation. Plaintiff was further led to believe that he would be allowed to raise objections if any

conclusions reached by CDPH were inconsistent with Ninth Circuit precedents and, as a result, violated the Supremacy Clause.

35. On October 8, 2024, Plaintiff received partial notice of the investigative findings only after personally visiting CDPH's office—almost two years after the investigation was initiated **(Exhibit 5). The Statement of Deficiencies, commonly called "the 2567" (its form number), is the public document of record in a complaint investigation. If the survey does not result in deficiencies or violations, the narrative is brief.** This is the important information that Plaintiff filed the complaint to obtain, yet it was not provided to Plaintiff. As a result, the partial notice Plaintiff received was entirely meaningless for his purposes. Plaintiff is attempting to ensure that this information aligns with Ninth Circuit precedents and complies with the Supremacy Clause in order to ensure a fair opportunity throughout the litigation process and reconcile the conflicting information in the medical record.

36. By this time, the Ninth Circuit had already affirmed the dismissal of Plaintiff's federal case, meaning:

**a**.) Plaintiff lost the opportunity to clarify conflicting medical records in time to present accurate information in his case filed on December 15, 2022.

**b**.) Plaintiff was deprived of critical investigative findings necessary for his

pending state court case, compromising his ability to recover burial costs and other damages.

**c**.) Plaintiff was unable to ensure that both CDPH and the Ninth Circuit court relied on the same facts and assumptions to conclude that UCSD Health did not violate any statutes and regulations.

## COUNT ONE: VIOLATION OF DUE PROCESS UNDER NOTICE THEORY

*(Against Investigator Mr. Deo Besana and District Manager Ms. Donna Loza in their Official Capacities)*

**Request for Prospective Injunctive Relief:**

**Legal Basis for Claim**

37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

38. The Due Process Clause of the Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, or property without due process of law.

39. Defendants Mr. Besana and Ms. Loza, in their official capacities, had ministerial/mandatory/non-discretionary duties under Cal. Health & Saf. Code § 1279.2(b), (c), and (d) to ensure the proper investigation and timely notice of findings related to Complaint No. CA00803793.

40. Defendant Ms. Loza, as District Manager, was responsible for signing and sending the final notice of findings.

41. Defendant Mr. Besana, as the assigned investigator, was responsible for conducting the investigation and ensuring that it complied with statutory obligations, including the timely notification of the complainant and affected parties.

42. Defendants are **sued based on their own failure** to perform legally required ministerial/non-discretionary duties.

43. Due Process protections require that a person be given meaningful notice and an opportunity to respond before being deprived of a legally protected interest.

**Failure to Perform Ministerial Duties & Denial of Due Process.**

44. Under Cal. Health & Saf. Code § 1279.2(b), CDPH is required to complete an investigation within 45 days in cases where there is no imminent danger of death or serious bodily harm.

45. If CDPH fails to meet this deadline, Cal. Health & Saf. Code § 1279.2(c) requires the department to document extenuating circumstances and provide written notice to the complainant explaining the reason for the delay and an anticipated completion date.

46. Upon completion of the investigation, Cal. Health & Saf. Code § 1279.2(d) mandates that CDPH notify the complainant and the facility in writing of the department's findings.

47. Defendant Mr. Besana, as the assigned investigator, was responsible for completing the investigation within the required timeframe and ensuring that Plaintiff was notified of any delays and the final determination.

48. Defendant Ms. Loza, as District Manager, was responsible for signing and issuing the final notice of findings.

49. Despite these statutory obligations, Defendants failed to:

• Complete the investigation within 45 days as required under § 1279.2(b).

• Provide written notice of extenuating circumstances or an anticipated completion date, as required by § 1279.2(c).

• Notify Plaintiff in writing of the investigation's findings upon completion, as required under § 1279.2(d).

48. As a result of these failures, Plaintiff was deprived of timely access to investigative findings, preventing him from reviewing, clarifying, and responding to critical evidence before the case was closed.

**Denial of Opportunity to Review & Respond**

49. On September 20, 2022, CDPH acknowledged receipt of Plaintiff's complaint **(Complaint No. CA00803793),** stating that the department would investigate

potential regulatory violations, and that Plaintiff could submit additional information.

50. CDPH 's Supervisor assured Plaintiff that Investigator Mr. Deo Besana would reach out before finalizing any findings to allow Plaintiff to submit additional information, clarify factual discrepancies, and ensure consistency with the legal and medical record.

51. Despite multiple follow-ups, Plaintiff was never contacted before the investigation was completed.

52. On December 2, 2022, after Plaintiff escalated concerns to the Office of Senate Minority Leader Brian W. Jones, a CDPH supervisor assured Plaintiff that Investigator Besana would allow him to clarify and submit further evidence before finalizing the investigation.

53. At the time of this assurance, Plaintiff was not informed that Investigator Mr. Besana had already completed the investigation on November 16, 2022.

54. Plaintiff was led to believe that he would be allowed to raise objections if any conclusions reached by CDPH were inconsistent with factual records and that he would have an opportunity to verify whether the investigation adhered to applicable statutory requirements.

55. Plaintiff only received partial notice of the investigative findings nearly two years later, on October 8, 2024, after personally visiting the CDPH office.

56. The Statement of Deficiencies (Form 2567), which serves as the public record of an investigation, was not provided to Plaintiff, depriving him of essential information that he sought through the complaint and that is necessary to ensure consistency in litigation.

**Concrete and Particularized Legal Harm**

57. By failing to fulfill their statutory obligations to provide notice and an opportunity to be heard before finalizing findings in the CDPH investigation, Defendants Mr. Besana and Ms. Loza have deprived Plaintiff of a critical opportunity to:

**a.)** Ensure Plaintiff alleged the same facts and circumstances consistent with investigative findings in his December 15, 2022, complaint in this Court.

**b.)** Obtain investigative findings necessary for his pending state court case.

**c.)** Ensure that this Court, the Ninth Circuit, and CDPH relied on the same facts and circumstances that the investigative findings relied on.

58. Without access to the investigative findings, Plaintiff cannot confirm whether the same factual basis was used in all legal proceedings, which impacts his ability to protect his property interest, including recovery of burial costs and other damages.

59. The ongoing failure to implement procedural safeguards in investigations affecting Plaintiff's legal claims creates a continued risk that Plaintiff will again be deprived of timely notice and due process protections.

60. Without injunctive relief, Plaintiff's pending appeal and future investigations into related matters may proceed without Plaintiff's knowledge or opportunity to ensure accuracy and completeness of factual determinations.

61. **Request for Prospective Injunctive Relief:**

WHEREFORE, Plaintiff respectfully requests that the Court enjoin Defendants Mr. Deo Besana and Ms. Donna Loza, in their official capacities, from depriving Plaintiff of his procedural due process rights by ordering them to:

**1.** Enjoin Defendants from depriving Plaintiff of full notice and an opportunity to respond before finalizing any investigative findings in matters affecting his property interest, including Complaint No. CA00803793.

**2.** Enjoin Defendants from depriving Plaintiff of access to the complete Statement of Deficiencies (Form 2567) and all other investigative documents related to Complaint No. CA00803793.

**3.** Enjoin Defendants from depriving Plaintiff of the ability to verify that any investigative findings relied upon by CDPH are made available in a timely manner, ensuring that the same factual basis is consistently applied across legal proceedings before this Court, the Ninth Circuit, and the state court.

**4.** Enjoin Defendants from depriving Plaintiff of procedural safeguards necessary to ensure compliance with Cal. Health & Saf. Code § 1279.2 in all future investigations, including adherence to statutory deadlines, issuance of timely notice, and provision of written explanations for delays.

**5.** Enjoin Defendants from depriving Plaintiff of the opportunity to dispute investigative conclusions that violate the Supremacy Clause and deprive Plaintiff of any property interest in the current proceeding, as this deprivation previously occurred without due process.

**6.** Grant any other relief the Court deems just and proper.

**Dated:** <u>12 February 2025</u>                                    <u>S/ Randal Jerome Dalavai</u>
                                                                 **Randal Jerome Dalavai**
                                                                 *Plaintiff, In Pro Se*

EXHIBIT 1

IVM- Inland Valley Medical Center

| Patient: | DALAVAI, GEETHA | | Admit: 9/1/2020 |
|---|---|---|---|
| MRN: | | | Disch: 9/16/2020 |
| DOB/Sex: | / Female | FIN: | SWH0000125336966 |
| Attending: | Orr,Norman K DO | | |

---

## ED Physician Record

This document has an image
Reason For Exam
Shortness of Breath (SOB)
URLRAD
SWHC RADIOLOGY
XR Chest 1 View Frontal

**HISTORY: 63 years old Female with Shortness of Breath (SOB).**

**COMPARISON: 5/30/2020**

**TECHNIQUE: A single frontal radiograph of the chest was obtained.**

**FINDINGS:**
**Diffuse bilateral groundglass opacities.**

**No pleural effusions or pneumothorax.**

**Normal cardiomediastinal silhouette.**

**No acute osseous abnormalities.**

**IMPRESSION:**
**Diffuse bilateral groundglass opacities, which may represent infiltrates versus severe interstitial pulmonary edema.**

**9/1/2020 3:13 PM by Mohammed Suhail, MD on NCRAD025**
Signature Line
***** Final *****

| Dictated by: | Suhail, Mohammed MD | Dictated DT/TM: | 09/01/2020 3:12 pm |
|---|---|---|---|
| Transcribed By: | MSTranscribed by: MS | Transcribed DT/TM: | 09/01/2020 15:12:36 |
| Electronically Signed by: Suhail, Mohammed MD | | Signed DT/TM: | 09/01/2020 3:13 pm |

---

**Reexamination/ Reevaluation**
Notes: Patient was seen, evaluated, and examined in serial fashion. I have reviewed lab results and radiology reports and have discussed all findings with patient. Precautions reviewed, close follow up with PMD strongly encouraged, will return here with any problems or concerns..
Time: 9/1/2020 16:34:00 .
Notes: Patient with bilateral infiltrates, O2 sat is 86% on room air. Given hypoxia and pneumonia, will admit for further management. COVID-19 swab is pending..

**Impression and Plan**
Pneumonia - ICD10-CM J18.9,
Hypoxia - ICD10-CM R09.02,
**Plan**
Condition: Guarded.

IVM- Inland Valley Medical Center

| | |
|---|---|
| Patient:  DALAVAI, GEETHA | Admit:  9/1/2020 |
| MRN: | Disch:  9/16/2020 |
| DOB/Sex:              / Female | FIN:   SWH0000125336966 |
| Attending:  Orr,Norman K DO | |

*ED Physician Record*

**Counseled:** Patient, Regarding diagnosis, Regarding diagnostic results, Regarding treatment plan, Patient indicated understanding of instructions.

**Disposition:** Patient care transitioned to: Time: 9/1/2020 16:14:00, Orr, Norman K DO, I spoke with the admitting provider using SBAR communication.  I have discussed the patients presentation, current symptoms and workup to this point.  Care of this patient is transferred to the admitting provider at this time.  Initial MSE has been completed in the Emergency Department..

**Notes:** This chart has utilized a physician scribe(s). I have reviewed the documentation and agree with its contents., The patient's family has been advised of the importance of follow-up, it is stressed that the patient does follow-up within the timeframe recommended as noncompliance with the follow-up instructions may cause morbidity and/or mortality.  They have been advised that the data obtained today is basically a single data point, there is no evidence of emergency medical condition at this time however one can still occur and the patient has been advised of strict return precautions and the importance of follow-up. Medical Screening Exam has been complete. All patient care communication to consultants, admitting physicians, change of shift hand-offs, if any, were performed by SBAR format. Voice transcription software (Dragon speak) has been utilized for parts of this note. The reader should be aware that typographical or word recognition errors are possible with voice transcription software and to please contact the dictating provider if there are any questions. This chart utilized a physician scribe, I have reviewed the documentation and agree with its contents..

*Electronically Signed By: Tsai, Benjamin*
*On: 09.01.2020 16:34 PDT*

# EXHIBIT 2

**UC San Diego Health**

Health Information Services
MC8825
200 W Arbor Dr
San Diego CA 92103-1911

Dalavai, Geetha
MRN: ████████  DOB: ████████  Sex: F
Adm: 9/16/2020, D/C: —

**09/16/2020 - Admission (Current) in TH 2-WEST (continued)**

Notes - All Notes (group 1 of 7) (continued)

recommend comfort measures only. She was in agreement and wishes to move rooms. She would like to have her husband stay at bedside and would like son to be able to visit. She has daughters in India and Dubai who are working on visas but they are unlikely to make it in time.

We will stop all labs, glucose checks, and insulin/medications. We will focus on her comfort with opioids as needed for sensation of shortness of breath. She will remain on high flow oxygen but will not titrate to SpO2. She is now DNAR-comfort care.

Total time spent face to face with patient and/or surrogate in Advance Care Planning: 30 min

***Timothy M. Fernandes, M.D., M.P.H.***
Associate Clinical Professor of Medicine
Division of Pulmonary and Critical Care Medicine
Pager 3567/PID# 62608

Electronically signed by Fernandes, Timothy Martin, MD at 10/01/20 1327

**H&P**

**Quartarolo, Jennifer M, MD at 9/16/2020  7:56 AM**

| | | |
|---|---|---|
| Author: Quartarolo, Jennifer M, MD | Service: General Medicine | Author Type: Attending Physician |
| Filed: 09/16/20 1254 | Date of Service: 09/16/20 0756 | Status: Addendum |
| Editor: Quartarolo, Jennifer M, MD (Attending Physician) | | |

**MEDICINE SERVICE HISTORY AND PHYSICAL**

**Attending MD:**
Quartarolo, Jennifer M, *

**Chief Complaint**

SOB

**History of Present Illness**

Much of history is obtained from outside hospital medical record patient currently very dyspneic making obtaining direct history difficult

63-year-old female with a history of rheumatoid arthritis, hypothyroidism, hypertension, DMII, latent tuberculosis on isoniazid.

The patient presented to outside hospital with acute shortness of breath.  In June of 2020 she was started on Humira and methotrexate.  She was admitted to outside hospital on September 1st with shortness of breath.  She has been evaluated by pulmonary medicine team and rheumatology.  Concern is for interstitial lung disease secondary to medication Humira versus methotrexate.  She has required high-flow oxygen at 40% and is currently on Solu-Medrol 40 mg Q 6 hours.  The outside hospital he has been on heated high-flow nasal cannula at 40% FiO2 at times to 60%. She has been working with physical therapy sitting at edge of bed for 10 minutes at a time.  Patient immigrated from India in 2012.

**Patient Background**

UC San Diego Health

Health Information Services
MC8825
200 W Arbor Dr
San Diego CA 92103-1911

Dalavai, Geetha
MRN: ██████  DOB: ██████, Sex: F
Adm: 9/16/2020, D/C: —

**09/16/2020 - Admission (Current) in TH 2-WEST (continued)**

**Notes - All Notes (group 6 of 7) (continued)**



**Assessment and Plan**:
Patient LTBI on treatment, RA diagnosed ~1.5 years ago having been on methotrexate since then and recently started on humira in 6/2020 coming in to UCSD as a transfer from OSH after presenting there on 9/1/2020 with acute hypoxic respiratory failure.  Concern on transfer was for ILD related to medication toxicity (methotrexate vs humira)-- sent here to evaluate for lung transplant.  She is not a candidate for lung transplant now given BMI and deconditioning.  We were consulted for Cocci IgM which is slightly positive.  Cocci CF negative, likely false positive.

Extensive infectious w/u has been unrevealing as above including cultures, RPNA, serum crag, serum asp, fungitell.  She was on low-dose steroids (5-10 mg pred/day), so is not at risk for things like pjp and fungitell is very sensitive for this.  She has not responded on broad spectrum abx.

Procalcitonin negative. RPNA negative.  Not consistent with bacterial pneumonia.

**# Acute hypoxic respiratory failure**
**# Cocci IgM slightly positive to 1.586**
- stop fluconazole
- team is completing 7 day empiric course of broad spectrum antibiotics

**# LTBI**
- continue INH+B6 and f/u with provider in the OP

Recommendations discussed with/paged to the primary team.
Seen and discussed with Dr. Cowell. We sign off.  Please page for any additional questions.

Elliott Welford, MD
Infectious Disease Fellow

Attending Note
I reviewed the chart, and saw and examined the patient.  I have reviewed Dr. Welford's note and agree with the findings and plan, which reflects our discussion.  Cocci IgM was probably a false positive, would thus d/c fluconazole.  Would complete 9 months of treatment for LTBI.

# EXHIBIT 3

**UC San Diego Health**

Health Information Services
MC8825
200 W Arbor Dr
San Diego CA 92103-1911

Dalaval, Geetha
MRN: ███████, DOB: ███████, Sex: F
Adm: 9/16/2020, D/C: —

**09/16/2020 - Admission (Current) in TH 2-WEST (continued)**

Notes - All Notes (group 5 of 7)

Progress Notes

**Seymann, Gregory B, MD at 9/11/2020  8:30 PM**

| Author: Seymann, Gregory B, MD | Service: General Medicine | Author Type: Attending Physician |
|---|---|---|
| Filed: 09/14/20 1234 | Date of Service: 09/11/20 2030 | Status: Signed |
| Editor: Seymann, Gregory B, MD (Attending Physician) | | |

**HOSPITAL MEDICINE OUTSIDE HOSPITAL TRANSFER ACCEPT NOTE**

Accept Date: 09/14/20

Referring Provider Name: Pulm Dr. Orr
Referring Provider Contact #: 909 374-6313

Referring Facility/Clinic: Inland Valley Medical Temecula

Dx: Hypoxic respiratory failure
Reason for Admit/Transfer: Specialty care by lung transplant team
Level of Care: IMU

Brief History:
Immunosuppressed on MTX/leucovorin and pred for RA
SOB x 1 month, on Humaira, ref to hospital by her rheum, hypoxic on arrival, CXR diffuse GGO.  COVID negative started broad spectrum abx.  Increasing O2 requirements, held immunosuppressives, started steroids, seen by Pulm/CT surg who felt currently too sick for diagnostic lung biopsy, rec transfer to UCSD for advanced Pulm eval and consideration of transplant.  Per the hospitalist, DR. Yung felt likely not a transplant candidate but they would see her and evaluate further as she is not responding to steroids, considering Rituxan
Cardiac ECHO 9/2 EF 70%
Methylprednisolone 40 q 6 hours current dose
Currently on FiO2 hi flow 60% over past week, stable

Special considerations: None
Consult Services Required (specify): Pulm

To Do: Consult Pulm

**When patient arrives on the unit at UCSD:**
**CONTACT: Thornton/Jacobs Triage Pager (3722) FOR TEAM ASSIGNMENT.**

Electronically signed by Seymann, Gregory B, MD at 09/14/20 1234

**Luoma, Kelsey Ann, MD at 9/16/2020  4:41 PM**

| Author: Luoma, Kelsey Ann, MD | Service: Pulmonary / Critical Care | Author Type: Fellow |
|---|---|---|
| Filed: 09/16/20 1839 | Date of Service: 09/16/20 1641 | Status: Attested |
| Editor: Luoma, Kelsey Ann, MD (Fellow) | | Cosigner: Bellinghausen-Stewart, Amy Lynn, MD at 09/16/20 1906 |

**UC San Diego Health**

Health Information Services
MC8825
200 W Arbor Dr
San Diego CA 92103-1911

Dalavar, Geetha
MRN⬛⬛⬛⬛, DOB:⬛⬛⬛⬛, Sex: F
Adm: 9/16/2020, D/C: —

**09/16/2020 - Admission (Current) in TH 2-WEST (continued)**

Notes - All Notes (group 5 of 7) (continued)

---

Attestation signed by Bellinghausen-Stewart, Amy Lynn, MD at 09/16/20 1906

ATTENDING ATTESTATION
I have reviewed Dr. Luoma's note above and agree with its content which reflects our joint decision making, with the following additions/changes.  Briefly,

63F w/ RA, dx 6/2019, now transferred from Inland Valley for worsening shortness of breath and dry cough w/ unexplained hypoxemic respiratory failure.

CT chest with diffuse GGO's, no dense consolidation.  Ddx is broad, and includes atypical bacterial infection, mycobacterial infection, endemic fungal infection, viral infection, drug induced pneumonitis (MTX/anti-TNF), RA associated ILD.

Will send rheum w/u and infectious w/u.  Start vanc/zosyn/azithro pending results of induced sputum. Will also discuss steroid plan w/ rheumatology. Formal transplant eval pending, continue HFNC for now.

Please refer to the fellow/resident note from same DOS for further details only in regards to: past medical, surgical history, family and social history, more detailed lab-work, additional study results, or other physical exam findings not noted above.

**ATTENDING CRITICAL CARE NOTE**

Summary of critical care provided:
Management of acute respiratory failure

This patient is critically ill requiring critical care services due to vital organ system dysfunction that includes the following organ system(s); Respiratory.

These problems include or stem from acute respiratory failure with hypoxemia .

My critical care of these organ system problems is required to assess, manipulate, and support vital organ function to prevent further life-threatening deterioration of the patient's condition.

Medical complexity of this patient's current illness is high.

Patient's risk of deterioration and/or death is high.

Total time I spent providing critical care to this patient today: 36 minutes


Amy L. Bellinghausen, MD




**ICU Transfer Acceptance Note**

**HPI:**
Geetha Dalavai is a 63 year old female with history of rheumatoid arthritis diagnosed June 2019 who presented to Inland Valley Medical Center 9/1 with loss of appetite and dry cough x 1 month, transferred to UCSD medicine for consideration of lung transplant 9/16, now transferring to ICU for progressive hypoxemia.

---

**UC San Diego Health**

Health Information Services
MC8825
200 W Arbor Dr
San Diego CA 92103-1911

Dalavai, Geetha
MRN: ████████ DOB: ████████, Sex: F
Adm: 9/16/2020, D/C: —

| 09/16/2020 - Admission (Current) in TH 2-WEST (continued) |
| --- |

**Notes - All Notes (group 5 of 7) (continued)**

Pt was diagnosed with RA June 2019 after presenting with joint pain and swelling in her hands. Started on methotrexate at that time with reported improvement in symptoms (no records available). About 8 months ago was found to have a positive quantiferon and was started on isoniazid/B6 (known exposure - sibling had pulm TB many years ago). Reportedly has been compliant w/ this. About 3-4 months ago had recurrence of diffuse joint pain, most sign in hands and knees. She was started on Humira June 2020 and has taken a few doses since then with improvement in joint pain.

About 1 month ago, had gradual onset of malaise, decrease PO appetite, dry cough and dyspnea. She was seen by her rheumatologist on 9/1 and was sent to the ED (Inland Valley) for hypoxemia.

On arrival to inland valley medical center found to be hypoxemic, initially requiring NC 8 L but with subsequent escalation of O2 requirement. Treated with ceftri/azithro for 2 days, stopped 6/2. Started methylpred 40 Q6 9/3. CT chest 9/3 with patcy diffuse ground glass and crazy paving. Repeat chest CT 9/8 with progression. Transferred to JMC 9/16 for lung transplant evaluation and HLC.  Now transferring to ICU for progressive hypoxemia.

When asked, patient denies fever, chills, night sweats, wt loss, leg swelling, abdominal distention, diarrhea, n/v, vision changes, eye pain, mouth pain/sores, rash, change in urine color/frequency, chest pain.

**PMH/PSH:** as above
**Past Medical History:**

| Diagnosis | Date |
| --- | --- |
| • Hypertension | |
| • Polyarthropathy or polyarthritis of multiple sites | |
| • RA (rheumatoid arthritis) (CMS-HCC) | |

**Family Hx:**
Sister with pulmonary TB many years ago
No other known pulm disease or autoimmune disease in the family
**Family History**

| Problem | Relation | Name | Age of Onset |
| --- | --- | --- | --- |
| • Diabetes | Mother | | |

**Social Hx:**
Tobacco: denies
Drugs: denies
IVDU: denies
Living situation: lives at home with family
Occupation: home maker. Prior teacher.
No pets or known exposure to asbestos, inhalants, chemicals, construction, etc.
**Social History**

| Tobacco Use | |
| --- | --- |
| • Smoking status: | Never Smoker |
| • Smokeless tobacco: | Never Used |
| Substance Use Topics | |
| • Alcohol use: | Never |
|     Frequency: | Never |
| • Drug use: | Never |

# EXHIBIT 4



State of California-Health and Human Services Agency
## California Department of Public Health



**TOMÁS J. ARAGÓN, M.D., Dr.P.H.**
*Director and State Public Health Officer*

**GAVIN NEWSOM**
*Governor*

September 20, 2022
Randall Dalavai
14332 Mountain Rd
Poway, CA 92064

Dear Randall Dalavai:

FACILITY: Uc San Diego Health Hillcrest - Hillcrest Med Ctr
COMPLAINT NUMBER: CA00803793

The purpose of this letter is to inform you that this office is in receipt of your complaint regarding the above named facility.

The Licensing and Certification Program (L&C) is responsible for the licensing and certification of health facilities and the investigation of complaints. Before L&C can cite a facility for a violation of a state or federal regulation, there must be sufficient factual evidence that a violation did, in fact, occur. L&C must verify the violation through direct observation, interviews, or review of documents.

If you have additional information that might affect the outcome of this investigation, or if you have any questions, please contact, Wendy Graca, Health Facilities Evaluator Supervisor, at 619-278-3700.

Sincerely,

*Donna Loza*

Donna Loza
District Manager



# EXHIBIT 5



State of California-Health and Human Services Agency
## California Department of Public Health



**TOMÁS J. ARAGÓN, M.D., Dr.P.H.**
*Director and State Public Health Officer*

**GAVIN NEWSOM**
*Governor*

October 8, 2024

Randall Dalavai
14332 Mountain Rd
Poway, CA 92064

Dear Randall Dalavai:

FACILITY: Uc San Diego Health Hillcrest - Hillcrest Med Ctr
COMPLAINT NUMBER: CA00803793

The Center for Health Care Quality (CHCQ) within the California Department of Public Health (State Agency) has completed an investigation of your complaint concerning Physician Services and Quality of Care/Treatment at Uc San Diego Health Hillcrest - Hillcrest Med Ctr. CHCQ made an unannounced visit to the facility on November 16, 2022 and investigated circumstances surrounding your complaint through direct observation, interviews, and/or review of documents. Deo Besana, HFEN tried to contact you to discuss the outcome of this investigation on January 12, 2024. We were not able to substantiate your complaint.

The basis for this finding is as follows: CHCQ was not able to validate the complaint allegation through direct observation, interviews, and/or review of documents. In addition, no other unrelated violations of regulations were observed.

Please find a copy of the CMS-2567 attached for your information.

Section 1227 and 1278 of the Health and Safety Code (HSC) authorizes any duly authorized officer, employee, or agent of the State Agency to enter and inspect any licensed health facility to secure compliance with, or to prevent a violation of any statute or regulations applicable to Uc San Diego Health Hillcrest - Hillcrest Med Ctr. Our final determination is based on the onsite investigation including direct observations, interviews, and review of documents.

Thank you for sharing your concerns. We will continue our efforts to ensure that patients receive care, services and reside in an environment in accordance with their needs and preferences.



Randall Dalavai
Page 2
October 8, 2024

Should you have any questions, please contact Mrs. Febby Mandalas-Zecha, Health
Facilities Evaluator Supervisor, at (619)278-3700.

Sincerely,

*Donna Loza*

Donna Loza, RN
District Manager

Enclosure: CMS-2567